FILED
CLERK, U.S. DISTRICT COURT
10/25/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>OMAR NAVIA,<br>　aka "Ozone," and<br>ADAN RUIZ,<br>　aka "youngjuggler,"<br>　aka "youngjuggla,"<br>　aka "Young Jugg,"<br><br>　　　　Defendants. | CR  8:23-cr-00146-JWH<br><br>I N D I C T M E N T<br><br>[21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(vi), (viii): Conspiracy to Distribute and to Possess with Intent to Distribute Fentanyl and Methamphetamine; 21 U.S.C. §§ 841(a)(1), (b)(1)(C): Distribution of Fentanyl; 21 U.S.C. § 853: Criminal Forfeiture] |

The Grand Jury charges:

[21 U.S.C. § 846]

A.  OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, but no later than August 27, 2021, and continuing to on or about December 4, 2022, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants OMAR NAVIA, also known as ("aka") "Ozone," and ADAN RUIZ, aka "youngjuggler," aka "youngjuggla," aka "Young Jugg," and co-conspirators Rajiv Srinivasan and Michael Ta, and others known and unknown to the Grand Jury,

conspired with each other to knowingly and intentionally distribute and to possess with intent to distribute the following controlled substances:

    1.    At least 400 grams of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi); and

    2.    At least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii).

B.    <u>MANNER AND MEANS OF THE CONSPIRACY</u>

    The objects of the conspiracy were to be accomplished, in substance, as follows:

    1.    Co-conspirator Srinivasan would advertise and accept orders for controlled substances, including pills resembling "M30" oxycodone pills containing fentanyl ("fentanyl pills") and methamphetamine, through the vendor account "redlightlabs" on multiple dark web marketplaces.

    2.    Defendants NAVIA and RUIZ would communicate with co-conspirator Srinivasan, including through encrypted messaging applications, such as "Session" and "Signal," and direct Instagram messages, regarding controlled substances that had been ordered from co-conspirator Srinivasan on the "redlightlabs" dark web vendor account.

    3.    Defendants NAVIA and RUIZ would obtain controlled substances from unknown sources of supply for distribution to customers who had ordered those drugs from co-conspirator Srinivasan.

4. Defendants NAVIA and RUIZ would obtain materials, including from co-conspirator Srinivasan, to package and seal fentanyl pills for distribution to customers.

5. Defendants NAVIA and RUIZ would supply controlled substances to co-conspirator Ta for distribution to customers who had ordered those drugs from co-conspirator Srinivasan.

6. Co-conspirator Ta would mail to customers in all 50 states parcels containing controlled substances that had been ordered from co-conspirator Srinivasan and had been delivered by defendants NAVIA and RUIZ.

7. Defendants NAVIA and RUIZ would be paid by co-conspirator Srinivasan for supplying controlled substances to co-conspirator Ta for distribution to customers, including through cryptocurrency, currency which had been routed through cryptocurrency exchanges, and mobile payment applications including Apple Cash, CashApp, PayPal, Venmo, and Zelle.

8. Co-conspirator Srinivasan and co-conspirator Ta would possess digital devices and would maintain a shared electronic document to coordinate the distribution of controlled substances supplied by defendants NAVIA and RUIZ to customers throughout the United States.

C. OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants NAVIA and RUIZ, and co-conspirators Srinivasan and Ta, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

1. On or before August 27, 2021, co-conspirator Srinivasan created a vendor account named "redlightlabs" on multiple dark web marketplaces, including "Dark0de," to advertise and accept orders for controlled substances.

2. On December 14, 2021, defendant NAVIA received from co-conspirator Srinivasan materials to package and seal fentanyl pills for distribution to customers.

3. On December 22, 2021, after co-conspirator Srinivasan asked defendant RUIZ to download the Signal encrypted messaging application because it provided "encrypted safe communication," defendant RUIZ agreed to download Signal.

4. On March 1, 2022, defendant NAVIA delivered controlled substances to co-conspirator Ta for distribution to customers and received $500 via Zelle from co-conspirator Srinivasan.

5. On March 16, 2022, after co-conspirator Srinivasan accepted an order for 500 fentanyl pills, defendant NAVIA delivered controlled substances to co-conspirator Ta for distribution to customers and received $400 via Zelle from co-conspirator Srinivasan.

6. On March 19, 2022, after delivering controlled substances to co-conspirator Ta the day prior, defendant NAVIA received $1,500 via Zelle, CashApp, and Apple Cash from co-conspirator Srinivasan.

7. On April 7, 2022, defendant NAVIA delivered controlled substances to co-conspirator Ta for distribution to customers.

8. On April 8, 2022, defendant NAVIA delivered controlled substances to co-conspirator Ta for distribution to customers.

9. On April 13, 2022, after co-conspirator Srinivasan accepted an order for 1,000 fentanyl pills, defendant RUIZ delivered fentanyl

pills to co-conspirator Ta for distribution to customers and received $800 on Zelle from co-conspirator Srinivasan.

10. Between April 18 and April 19, 2022, defendant RUIZ delivered fentanyl pills to co-conspirator Ta for distribution to customers.

11. On May 9, 2022, using partially coded language in an Instagram direct message, co-conspirator Srinivasan advised defendant RUIZ not to include dollar amounts for controlled substances on defendant RUIZ's Instagram stories in order to avoid detection by Instagram.

12. On May 17, 2022, after co-conspirator Srinivasan accepted 19 orders for 519 fentanyl pills and 4 orders for 36 grams of methamphetamine, defendant NAVIA delivered controlled substances to co-conspirator Ta for distribution to customers and received $152 via Cash App from co-conspirator Srinivasan.

13. On May 18, 2022, after co-conspirator Srinivasan accepted 27 orders for 1,220 fentanyl pills and 12 orders for 56.5 grams of methamphetamine, defendant NAVIA delivered controlled substances to co-conspirator Ta for distribution to customers and received $150 via Apple Cash from co-conspirator Srinivasan.

14. On May 19, 2022, after co-conspirator Srinivasan accepted 21 orders for 528 fentanyl pills, defendant RUIZ delivered fentanyl pills to co-conspirator Ta for distribution to customers.

15. On June 6, 2022, after co-conspirator Srinivasan accepted 14 orders for 385 fentanyl pills, defendant RUIZ delivered fentanyl pills to co-conspirator Ta for distribution to customers.

16. On June 14, 2022, after co-conspirator Srinivasan accepted 17 orders for 811 fentanyl pills and 8 orders for 50.2 grams of

methamphetamine, defendant NAVIA delivered controlled substances to co-conspirator Ta for distribution to customers.

17. On June 27, 2022, after co-conspirator Srinivasan accepted 21 orders for 1,283 fentanyl pills and 12 orders for 82 grams of methamphetamine, defendant NAVIA delivered controlled substances to co-conspirator Ta for distribution to customers and received $500 via CashApp from co-conspirator Srinivasan.

18. On November 15, 2022, in his residence, co-conspirator Ta possessed 181.79 grams of fentanyl, approximately 391 grams of methamphetamine, and a digital device containing customer and shipping information relating to drug transactions for the "redlightlabs" account.

19. On November 15, 2022, co-conspirator Srinivasan possessed, in his residence, digital devices containing a shared electronic document, to which co-conspirator Ta also had access, which detailed approximately 3,800 drug transactions to approximately 1,400 unique customers in all 50 states, totaling approximately 123,688 fentanyl pills, 9,363 grams of methamphetamine, 299 grams of fentanyl powder, 296 grams of black tar heroin, and 27 grams of cocaine, which occurred between May 2022 and November 2022 through the "redlightlabs" dark web account.

20. On December 4, 2022, in an Instagram direct message, defendant RUIZ informed an unknown co-conspirator that he had lost $7,000 in drug proceeds because of co-conspirator Srinivasan's federal arrest on drug trafficking charges.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(b)]

[DEFENDANT RUIZ]

On or about April 13, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant ADAN RUIZ, also known as ("aka") "youngjuggler," aka "youngjuggla," aka "Young Jugg," knowingly and intentionally distributed, and willfully caused to be distributed, N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

FORFEITURE ALLEGATION

[21 U.S.C. § 853]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, in the event of any defendant's conviction of the offenses set forth in either of Counts One or Two of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

   (a)   All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from such offenses;

   (b)   All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offenses; and

   (c)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.   Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the

///

///

jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                        A TRUE BILL

                                                     /S/
                                        _____
                                        Foreperson

E. MARTIN ESTRADA
United States Attorney

*[signature]*

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

J. MARK CHILDS
Assistant United States Attorney
Chief, International Narcotics,
 Money Laundering, and
 Racketeering Section

BRITTNEY M. HARRIS
Assistant United States Attorney
Deputy Chief, International
 Narcotics, Money Laundering, and
 Racketeering Section

GREGG E. MARMARO
Assistant United States Attorney
International Narcotics, Money
 Laundering, and Racketeering
 Section